**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PEI Licensing, Inc., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 17-CV-6589 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Thom Browne, Inc. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR
COMPETITION AND RELATED CLAIMS**

Plaintiff PEI Licensing, Inc., by and through its attorneys, hereby alleges the following as and for its Complaint for Trademark Infringement, Trademark Dilution, Unfair Competition and Related State and Common Law Claims against Defendant Thom Browne, Inc. ("Thom Browne" or "Defendant"):

**NATURE OF THE ACTION**

1. This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; consumer fraud and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; and unfair competition in violation of Illinois common law.

2.      This action results from Defendant's unauthorized use of penguins on apparel and apparel accessories in a manner that is likely to cause confusion with and dilute PEI's famous penguin trademarks.

**THE PARTIES**

3.      PEI Licensing, Inc. is a Delaware corporation with its principal place of business at 3000 NW 107th Avenue, Miami, Florida 33172.

4.      Thom Browne, Inc. is a Delaware corporation with its principal place of business at 240 West 35th Street, 16th Floor, New York, NY 10001.

5.      PEI Licensing, Inc. is the trademark owner for Perry Ellis International and its affiliated companies (collectively "PEI").

6.      PEI is a world-famous designer, distributor and licensor of high-quality men's, women's and children's apparel, fashion accessories and fragrances, as further described below. One of PEI's most-famous brands is the Original Penguin®.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over PEI's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b). This Court has supplemental jurisdiction over PEI's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367, because these claims are joined with substantial and related claims under the trademark laws of the United States, and they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy or derive from a common nucleus of operative facts.

8.    The exercise of personal jurisdiction by the Court over Defendant is appropriate in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

9.    This Court has personal jurisdiction over Defendant because Defendant targets and makes sales in Illinois and in this District. Defendant also operates an Internet website at the domain www.thombrowne.com, which is accessible by and targets residents of Illinois and this District.

10.    Defendant also sells its products at a number of retail stores in this District, including, for example, Barneys, as well as online into this District through its numerous retail partners.

11.    Defendant has purposefully availed itself of the benefits of doing business in Illinois by actually transacting business in Illinois. In undertaking these deliberate acts, including all facts and allegations set forth below, which are incorporated herein by reference, Defendant had fair warning and could reasonably anticipate that it could be called before a federal district court in Illinois.

12.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because both parties are doing business in this District, the claims arose in this District, and a substantial part of the events giving rise to the claims occurred in this District. Moreover, Defendant transacts business in this District, has committed tortious acts in this District and has engaged in activities that subject Defendant to the jurisdiction of this Court. Finally, because Defendant is subject to personal jurisdiction in this District, venue is appropriate in this District.

## PEI AND ITS PENGUIN TRADEMARKS

13.     PEI is an international company and leading marketer of a broad line of apparel and related goods.  PEI manufactures, markets, and distributes its goods under a number of well-known, globally recognized brands, including, for example, PERRY ELLIS®, JANTZEN®, LAUNDRY BY SHELLI SEGAL®, MANHATTAN®, ORIGINAL PENGUIN®, and the Original Penguin design (as shown below):



14.     PEI's goods are distributed through regional, national, and international department stores, national and regional chain stores, mass merchants, and green grass and other specialty stores. PEI also engages in direct-to-consumer business through company-owned retail stores and e-commerce websites.

15.     PEI, through its predecessors and/or related companies, adopted and first used a penguin design on or in connection with apparel and related goods at least as early as 1956 and the PENGUIN word mark at least as early as 1967.

16.     In fact, the Original Penguin brand has been a fashion mainstay for more than 60 years. It came to fame in the 1950's—long before Ralph Lauren and similar producers of logo fashion apparel—and it has been adopted and promoted by top celebrities and athletes over the years, including Bing Crosby, Bob Hope, Arnold Palmer, and others.

17.     More recently, PEI's famous Original Penguin polo shirts have been spotted on celebrities including, for example, Brad Pitt and Jake Gyllenhaal. Consumers recognize PEI's penguin trademark as a classic and well-known fashion brand sold at

upscale retailers (e.g., Nordstrom) and at stand-alone Original Penguin® retail stores. *See* www.originalpenguin.com.

18.    For more than 60 years, PEI, through its predecessors and/or related companies, has continuously used the penguin design and the PENGUIN word mark, in addition to a number of other PENGUIN-formative marks and penguin designs, on goods and services  spanning many International Classes, including, for example, Classes 3, 9, 14, 18, 25, 28 and 35.

19.    PEI owns the following U.S. registrations, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, the "PEI Registrations"):

| Mark | Reg. No. | Goods | Status |
|------|----------|-------|--------|
|  | 673,912 | Golf shirts and other sportswear, namely, sport shirts, sweaters | Incontestable |
|  | 1,116,035 | Barrel bags and golf umbrellas; golf bag covers, golf balls, golf tees | Incontestable |
|  | 2,075,922 | Clothing; namely, men's, women's and children's tops, shirts, skirts, pullover windshirts, pants, shorts, sweat shirts, jackets, hosiery, hats, scarves, gloves, footwear; activewear; namely, jackets, pullover windshirts, sweaters, shirts, skirts, shorts, pants, swimwear, warm-up suits, training suits, sweat suits, sweat shirts, sweat shorts, sweat pants, footwear, hosiery, hats, scarves and gloves; and sportswear; namely, shorts, jackets, pullover windshirts, shirts, skirts, pants, warm-up suits, training suits, sweat suits, sweat shirts, sweat shorts, sweat pants, hosiery, hats, scarves, gloves | Incontestable |

| | | | |
|---|---|---|---|
| **PENGUIN** | 2,749,389 | Slacks, walking shorts, sports shirts, and jackets | Incontestable |
|  | 2,870,641 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely, shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks | Incontestable |
|  | 2,880,454 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind-resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks | Incontestable |
|  | 3,323,720 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely, shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks | Incontestable |
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 3,681,969 | Luggage, luggage straps, travel bags, garment bags and shoe bags for travel, briefcases, briefcase-type portfolios, attache cases, messenger bags, handbags, pocketbooks, leather and fabric evening bags, clutches, tote bags, athletic bags, duffel bags, beach bags, diaper bags, cosmetic bags sold empty, toiletry cases sold empty, school bags, knapsacks, waist packs, umbrellas, wallets, billfolds, business card cases, credit card cases, key cases, change purses | Incontestable |
| **AN ORIGINAL PENGUIN** | 3,717,328 | Watches, clocks, parts of watches and clocks, and their cases | Incontestable |

| | | | |
|---|---|---|---|
|  | 3,717,329 | Watches, clocks, parts of watches and clocks, and their cases; Luggage, luggage straps, travel bags, garmentbags and shoe bags for travel, briefcase, briefcase-type portfolios, attache cases, messenger bags, handbags, pocketbooks, leather and fabric evening bags, clutches, tote bags, athletic bags, duffel bags, beach bags, diaper bags, cosmetic bags sold empty, toiletry cases sold empty, school bags, knapsacks, waist packs, umbrellas, wallets, billfolds, business card cases, credit card cases, key cases, change purses | Incontestable |
|  | 3,961,901 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Incontestable |
| **AN ORIGINAL PENGUIN BY MUNSINGWEAR** | 3,961,902 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Incontestable |
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 4,032,486 | Fragrances, namely, perfumes, eau de parfum, cologne, eau de toilet, body lotion, bath gel, hand soap, perfumed soap and cosmetics | Registered |
|  | 4,058,748 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Registered |

| | | | |
|---|---|---|---|
|  | 4,058,749 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Registered |
|  | 4,132,700 | Fragrances, namely, perfumes, eau de parfum, cologne, eau de toilet, body lotion, bath lotion, bath gel, hand soap, perfumed soap and cosmetics | Registered |
| **PENGUIN** | 4,263,091 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Registered |
|  | 4,308,261 | Retail store services featuring apparel, hats, leather goods, fashion accessories, jewelry, footwear, cosmetics, personal care products, eyewear, luggage and sports equipment | Registered |
|  | 4,481,609 | Watches, jewelry, namely, rings, bracelets, necklaces, cufflinks, and tie bars | Registered |
|  | 4,598,008 | Dress shirts and tuxedo shirts; men's, women's and children's underwear, sleepwear, loungewear, pajamas and robes | Registered |
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 4,598,009 | Dress shirts and tuxedo shirts; men's, women's and children's underwear, sleepwear, loungewear, pajamas and robes | Registered |
|  | 4,946,634 | Carrying cases specially adapted for electronic equipment, namely, mobile phones, smart phones and tablet computers, headphones, ear buds and computer stylus | Registered |

| **AN ORIGINAL PENGUIN BY MUNSINGWEAR** | 4,946,635 | Carrying cases specially adapted for electronic equipment, namely, mobile phones, smart phones and tablet computers, headphones, ear buds and computer stylus | Registered |
| --- | --- | --- | --- |
| *an original* **Penguin** BY **Munsingwear** | 4,951,775 | Carrying cases specially adapted for electronic equipment, namely, mobile phones, smart phones and tablet computers, headphones, ear buds and computer stylus | Registered |

20. The PEI Registrations constitute *prima facie* evidence of the validity of the PEI trademarks and of PEI's exclusive ownership of and exclusive right to use the penguin marks in commerce in connection with the identified goods and services. *See* 15 U.S.C. § 1057(b) and § 1115(a).

21. PEI also owns extensive common law rights in its penguin designs and PENGUIN word marks in connection with a wide variety of apparel, accessories and related goods and services. PEI promotes and sells these goods and services under its penguin designs and PENGUIN word marks in retail stores and on its website www.originalpenguin.com, where the marks are prominently displayed.

22. The marks reflected in the PEI Registrations, together with PEI's extensive common law rights in the penguin designs and PENGUIN word marks, are hereafter referred to as the "PENGUIN Marks."

23. For many years, PEI has extensively advertised, promoted, and sold products bearing the PENGUIN Marks as companion products originating from the same source. The PENGUIN Marks have been so extensively used and advertised together that goods bearing the PENGUIN Marks are recognized by trade and consumers as companions and as originating from a single source. As a result, the

PENGUIN Marks constitute a family of PENGUIN Marks that identify PEI as the source of the goods provided.

24.     PEI has expended substantial sums of money in marketing, advertising, and promoting its PENGUIN Marks and, through such sales and advertising, has generated substantial goodwill and customer recognition in its PENGUIN Marks. The public has come to associate the PENGUIN Marks exclusively with PEI.

25.     PEI has derived substantial revenues from the sale of its products under the PENGUIN Marks.

26.     PEI's extensive use and advertising of the PENGUIN Marks has resulted in consumer recognition that the PENGUIN Marks identify PEI as the source of fashionable, high-quality products. The PENGUIN Marks are distinctive of PEI's products and are well-known and famous, and valuable goodwill has been generated in the PENGUIN Marks.  Such goodwill was generated long before the filing date and use of penguin trademarks by Defendant.

**WILLFUL INFRINGEMENT BY THOM BROWNE**

27.     In recent months, Defendant has launched a new fashion line of apparel and accessories with various items featuring penguins. Some examples of these products are shown below and in the attached Exhibit A.

  



28.     Defendant is selling these products through multiple retailers, including, for example, Barneys, Bergdorf Goodman, Harrod's, SSENSE, and others, as well as on its own website at www.thombrowne.com.

29.     By affixing a penguin design to numerous apparel and accessory items, Defendant is creating a clear association in the minds of consumers between Thom Browne and the penguin trademark.

30.     Indeed, Defendant's infringement of the PENGUIN Marks is ubiquitous throughout its clothing line.

31.     Pursuant to 15 U.S.C. § 1072, the PEI Registrations constitute constructive notice of the PENGUIN Marks by PEI, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the Registrations against any other party, including Defendant.

32.     At the time Defendant first used the PENGUIN Marks in commerce, Defendant had knowledge of PEI's prior constructive use, and Defendant knew or should have known of the valuable reputation and goodwill symbolized by the PENGUIN Marks. 15 U.S.C. § 1057(c).

33.     On July 19, 2017, PEI sent a letter expressly notifying Defendant that PEI believed Defendant's continued sales of penguin apparel and accessories infringe and dilute the PENGUIN Marks.

34.     Despite PEI's subsequent demands that Defendant immediately stop selling apparel and accessories featuring the PENGUIN Marks, Defendant continues to willfully infringe and dilute the PENGUIN Marks.

35.     Defendant's continued use of the PENGUIN Marks is willful and intentional and is intended to trade on and/or diminish the reputation and goodwill of PEI.

36.     Defendant's use of the PENGUIN Marks is likely to mislead, deceive and confuse consumers. It is likely that consumers will mistakenly believe that Defendant is connected to, associated with or in some way affiliated with PEI, when in fact no such connection, association or affiliation exists.

37.     Defendant's conduct causes damage and irreparable injury to PEI, and to its goodwill and reputation.

38.     As a result of the aforesaid acts by Defendant, PEI has suffered and continues to suffer substantial damage and irreparable injury. PEI has no adequate remedy at law, and unless Defendant is restrained and enjoined by the Court, these acts will continue to cause damage and irreparable injury to PEI, and damage its goodwill and business reputation.    PEI cannot ascertain the precise amount of its damage at this time.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

39.     PEI repeats and realleges the allegations of Paragraphs 1 through 38 as though fully set forth herein.

40.     Defendant's acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41.     PEI is the rightful owner of the PEI Registrations, which constitute proof of PEI's valid, exclusive trademark rights and its entitlement to protection under the Lanham Act.

42.     Defendant has used, and continues to use, the PENGUIN Marks in United States commerce in connection with the claimed services.

43.     Defendant's unauthorized use of the PENGUIN Marks is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendant's goods and services by PEI or as to the affiliation, connection or association between PEI and Defendant. The consuming public and the trade are likely to believe that Defendant's goods or services originate with PEI; are licensed, sponsored or

approved by PEI; or are in some way connected with or related to PEI, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

44.    Defendant has used the PENGUIN Marks with full knowledge of PEI's prior rights and is continuing to use the Marks after being warned by PEI that its use is infringing. Defendant's continued use of the PENGUIN Marks constitutes intentional and willful infringement of PEI's trademark rights and entitles PEI to enhanced damages.

45.    Defendant has had actual notice of the PENGUIN Marks since it first began using the Marks and at least as early as July 19, 2017, when PEI sent a cease and desist letter. Thus, Defendant has been willfully infringing the PENGUIN Marks.

46.    These infringing acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

**COUNT II**
**FEDERAL UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

47.    PEI repeats and realleges the allegations of Paragraphs 1 through 46 as though fully set forth herein.

48.    Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.    Defendant's unauthorized use in interstate commerce of the PENGUIN Marks is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with PEI, or as to the origin, sponsorship, or approval of Defendant's goods or services, in violation of Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

50.     These acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

## COUNT III
## FEDERAL TRADEMARK DILUTION BY BLURRING
## 15 U.S.C. § 1125(c)

51.     PEI repeats and realleges the allegations of Paragraphs 1 through 50 as though fully set forth herein.

52.     Defendant's acts constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

53.     As a result of the duration, extent, and geographic reach of PEI's use of the PENGUIN Marks as well as advertising and publicity associated with the PENGUIN Marks, the PENGUIN Marks have achieved an extensive degree of distinctiveness and are famous trademarks. The PENGUIN Marks are widely recognized by the general consuming public as a designation of source for PEI's products. Defendant began using the PENGUIN Marks in interstate and/or United States commerce after the PENGUIN Marks became famous and distinctive.

54.     Because of the similarity of the marks, Defendant's commercial use of the PENGUIN Marks is likely to cause dilution by blurring, by creating a likelihood of association with PEI's famous PENGUIN Marks. Defendant's commercial use is likely to impair the distinctiveness of PEI's famous PENGUIN Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) causing damage to PEI.

55.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

## COUNT IV
## ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 Ill. Comp. Stat. 510/1 et seq.

56.     PEI repeats and realleges the allegations of Paragraphs 1 through 55 as though fully set forth herein.

57.     Defendant's acts constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

58.     Defendant's unauthorized use of the PENGUIN Marks has caused, and is likely to cause in the future, confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendant's and PEI's businesses, as it gives rise to the incorrect belief that Defendant's business has some connection with PEI. These acts constitute deceptive trade practices in the course of Defendant's business in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

59.     These acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

## COUNT V
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES
### 815 Ill. Comp. Stat. 505/1 et seq.

60.     PEI repeats and realleges the allegations of Paragraphs 1 through 59 as though fully set forth herein.

61. Defendant's acts constitute consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*

62. Defendant's unauthorized use of the PENGUIN Marks constitutes unfair competition and deceptive acts in the course of trade or commerce in Illinois.

63. Defendant intended that consumers would rely on this deception.

64. Defendant's acts have caused and will continue to cause harm to PEI in that they will deceive consumers and destroy the goodwill embodied in the PENGUIN Marks.

## COUNT VI
## ILLINOIS COMMON LAW UNFAIR COMPETITION

65. PEI repeats and realleges the allegations of Paragraphs 1 through 64 as though fully set forth herein.

66. Defendant's acts constitute unfair competition under Illinois common law.

67. Defendant has misappropriated valuable property rights of PEI, has passed off its goods and services as those of PEI, is trading off the goodwill symbolized by the PENGUIN Marks and is likely to cause confusion or mistake, or to deceive members of the consuming public and the trade. These acts have continued in bad faith despite Defendant's knowledge of PEI's trademark rights. These acts constitute unfair competition in violation of the common law of the State of Illinois.

68. Defendant's acts have caused and will continue to cause harm to PEI.

**PRAYER FOR RELIEF**

WHEREFORE, PEI prays that this Court enter a judgment and order:

1. That Defendant has willfully violated Sections 32(1), 43(a) and 43(c) of the Lanham Act;

2. That Defendant committed acts of unfair competition and deceptive business and trade practices under Illinois common and statutory law;

3. That Defendant, its officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

A. Using the PENGUIN Marks, alone or in connection with other terms, in commerce in any manner;

B. Using any name, mark, user name, social media handle or domain name that incorporates the PENGUIN Marks, or is confusingly similar to the PENGUIN Marks, including but not limited to any reproduction, counterfeit, copy or colorable imitation of the PENGUIN Marks, or registering, transferring or exercising control over any domain names or social media pages that incorporate, in whole or in part, the PENGUIN Marks or anything confusingly similar;

C. Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant is in any way affiliated, connected or associated with PEI or that PEI is in any way affiliated, connected or associated with Defendant;

D. Licensing or authorizing others to use the PENGUIN Marks, or any other mark that is confusingly similar to the PENGUIN Marks;

E.     Injuring PEI's business reputation and the goodwill associated with the PENGUIN Marks, and from otherwise unfairly competing with PEI in any manner whatsoever;

F.     Passing off Defendant's goods or services as those of PEI; and,

G.     Altering, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in the actual or constructive care, custody or control of Defendant that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located.

4.     That, pursuant to 15 U.S.C. § 1118, Defendant be required to deliver up and destroy all products, labels, packages, wrappers, photographs, digital files, mock-ups, advertisements, promotions and all other matter in the custody or under the control of Defendant that bear the PEI word mark or any other mark that is likely to be confused with the PENGUIN Marks;

5.     That Defendant be ordered to shut down, close out and terminate all Twitter, Facebook, and other social media accounts or Internet pages that use the PENGUIN Marks or feature any name incorporating, in whole or in part, the PENGUIN Marks or that are likely to cause confusion with the PENGUIN Marks, and that Twitter, Facebook, and other pertinent social media providers be ordered to transfer such accounts to Plaintiff;

6.     That, because of Defendant's willful actions and pursuant to 15 U.S.C. § 1117(a) (as an "exceptional case") and 815 Ill. Comp. Stat. 505/10a *et seq.*, PEI be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

A.     All profits received by Defendant from sales and revenues of any kind dating from Defendant's first use of the PENGUIN

Marks to present, less only proven elements of cost or deduction, and all damages sustained by PEI as a result of Defendant's actions;

B.     Treble damages or profits, whichever amount is greater;

C.     Reasonable attorneys' fees; and,

D.     The costs of the action.

7.     That pursuant to 15 U.S.C. § 1116, Defendant be directed to file with the Court and serve on PEI within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction; and,

9.     That PEI be granted such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

PEI demands a trial by jury on all issues that may be so tried.

Respectfully submitted,

PEI Licensing, Inc.

Dated: September 12, 2017

By:  /s/ Stephanie L. Crigler
Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala (Reg. No. 6275312)
Tom Monagan (Reg. No. 6278060)
Stephanie L. Crigler (Reg. No. 6323770)
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
Telephone:   (888) 315-0732
Facsimile:    (312) 268-5063
courts@norvellip.com

*Attorneys for PEI Licensing, Inc.*